**YAMAHA CORPORATION OF AMERICA et al., Plaintiffs,**

v.

**ABC INTERNATIONAL TRADERS, CORP., et al., Defendant(s).**

No. CV 86–7892–RSWL.

United States District Court, C.D. California.

Dec. 23, 1988.

---

Robert R. Thornton, Zobrist & McCullough, Los Angeles, Cal., Robert E. Wagner, Linda A. Kuczma, Wallenstein, Wagner, Hattis, Strampel & Aubel, Ltd., Chicago, Ill., for plaintiffs.

Larry C. Russ, Jeff Berke, Haines, Russ, McMurry & de Recat, John Carson, Gregory Wood, Nilsson, Robbins, Dalgarn, Berliner Carson & Wurst, Los Angeles, Cal., for defendant(s).

## OPINION

LEW, District Judge.

Plaintiff Yamaha Corporation of America ("Yamaha–America") brought this action claiming that the importation and sale of Yamaha brand goods by defendant ABC International Traders Corporation ("ABC") violates various provisions of Federal and California law.[1] In this motion, ABC seeks summary judgment as to Counts III, IV, and V of Yamaha's first amended complaint. Count III alleges unfair trade practices actionable under California Business and Professions Code § 17200 and "common law." Count IV alleges dilution and injury to reputation pursuant to California Business and Professions Code § 14330. Count V alleges violations of the Tariff Act of 1930 § 526, 19 U.S.C. § 1526 and the Lanham Act § 42, 15 U.S.C. § 1124. A

---

1. Plaintiffs Yamaha Electronics Corporation and Yamaha Music Corporation are wholly-owned subsidiaries of Yamaha America Corporation. Defendants Isaac and Farhad Larian are owners and officers of ABC.

hearing was held on this matter October 17, 1988 at which time the Court heard argument and issued an order granting summary judgment to defendants on all three claims. The following shall constitute the Court's findings of fact and conclusions of law in support of that order.

## I. FACTUAL BACKGROUND

Yamaha–Japan (formerly named Nippon Gakki Seizo Kabushiki Kaisha) is a Japanese corporation which manufactures, *inter alia*, electronic musical instruments and sound equipment. Yamaha–Japan affixes various of the trademarks at issue in this case to the equipment it produces. Plaintiff Yamaha–America is a California corporation wholly-owned by Yamaha–Japan. Until November 19, 1986, Yamaha–Japan was the registered owner of certain Yamaha trademarks as used on electronic musical instruments and sound equipment.[2] On that date, Yamaha–Japan assigned the Yamaha trademark registrations as used on electronic musical instruments and sound equipment to Yamaha–America. Yamaha–America is now the title holder to all of the U.S. registrations for the Yamaha trademarks as applied to electronic musical instruments and sound equipment.

Defendant ABC imports, distributes, advertises, warrants and provides support services for various brands of goods including genuine Yamaha brand electronic musical instruments and sound equipment.[3] ABC's sale of and offer of services for genuine Yamaha brand goods is in direct competition with the sales and service provided by Yamaha–America. ABC uses the Yamaha trademarks in its advertisements for the genuine Yamaha brand goods it sells. ABC provides its own warranty and support services with respect to the various brands of goods which it distributes including Yamaha brand goods.

On December 28, 1987 Yamaha–America filed its First Amended Complaint. As noted above, Count III alleges unfair trade practices actionable under California Business and Professions Code § 17200 and "common law," Count IV alleges dilution and injury to reputation pursuant to California Business and Professions Code § 14330, and Count V alleges violations of the Tariff Act of 1930 § 526, 19 U.S.C. § 1526 and the Lanham Act § 42, 15 U.S.C. § 1124. The factual basis for each claim is ABC's alleged importation of goods bearing the Yamaha trademarks without the approval or sanction of Yamaha–America, the owner of those marks. The first Amended Complaint stated in pertinent part:

> Notwithstanding YAMAHA's rights in its registered "Yamaha" Marks (sic), Defendants have been in the possession of, and have dealt in, advertised, offered for sale and sold in commerce, sound keyboards, digital synthesizers, FM tone generators, digital rhythm programmers, digital processor/reverbs, digital reverberators and 4 track recorders which were *made by Nippon Gakki Seizo Kabushiki Kaisha* and bearing marks identical or confusingly similar to one or more of plaintiffs' "Yamaha" marks, knowing that such goods were neither imported or placed in commerce by YAMAHA, the owner of the trademark registrations. (First Amended Complaint p. 13.) (emphasis added)

On August 26, 1988 ABC moved the Court for summary judgment as to the third, fourth and fifth claims for relief. The motion was timely opposed and the Court, after hearing oral argument, granted the motion in its entirety with findings of fact and conclusions of law to follow.

## II. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate when there is no genuine issue as to

---

**2.** The marks at issue in this case are "Yamaha," "Yamaha Tuning Fork Design," and "Portasound."

**3.** Hereafter, equipment manufactured by Yamaha–Japan will be described as "genuine." Any contention that only equipment sold through Yamaha–America should be considered genuine is meritless. Despite Yamaha–America's ownership of the Yamaha marks, it is clear from the papers submitted that the Yamaha marks represent design and manufacture by Yamaha–Japan.

any material fact and the moving party is entitled to judgment as a matter of law. The burden of proving these elements falls on the moving party but the adverse party, in order to evade summary judgment, must provide the Court with some evidence that a genuine issue of fact does exist. Rule 56 states in pertinent part, "When a motion for summary judgment is made ... an adverse party may not rest upon the mere allegations or denials of his pleading, but his response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Interpreting this requirement, the Supreme Court, in *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), held that the moving party is entitled to summary judgment when the non-moving party fails to make a sufficient showing on an essential element of his case with respect to which he will bear the burden of proof at trial.

It is the opinion of this Court that Yamaha–America has failed to make a sufficient showing on several elements of its claims against ABC.

## COUNT III—ALLEGING UNFAIR BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SEC. 17200 ET SEQ.

■ California Business and Professions Code § 17200 et seq. establishes a remedy for the broad tort of "unfair competition." Specifically, the statute makes actionable any "unlawful, unfair or fraudulent business practice" and any "unfair, deceptive or misleading advertising" practice. Yamaha has alleged that ABC has violated that statute by, 1) selling non-Yamaha goods that are labeled with the Yamaha name and trademark, 2) using the Yamaha name and trademark in offering "warranty" services to dealers and 3) misappropriating Yamaha's good will by engaging in those practices.

ABC contends that it has not violated § 17200 because it is selling *genuine* Yamaha goods and identifying them as such. They note that selling genuine Yamaha goods under the Yamaha trademark is not in any way false or misleading and thus is not actionable under Section 17200. ABC further argues that it does not hint or imply that it is an approved or authorized dealer of Yamaha products and that it places notices on all of the Yamaha goods they sell and all of the advertisements they produce that state that the goods are imported and distributed by ABC and not by Yamaha itself. ABC has provided declarations and samples of their advertising that support these contentions.

Yamaha–America has responded to the claims put forth by ABC by first stating that ABC's contention that it sells only genuine Yamaha products is not supported by any evidence. They note that ABC has steadfastly refused to produce documents which support their claim that the products they sell are genuine. Thus, they argue that at the very least there is an issue of fact surrounding the genuineness of the products sold by ABC. Second, Yamaha states that the critical determination to be made in this case is whether or not the sale of products and services bearing the Yamaha trademark is likely to cause confusion as to source or sponsorship. They argue that the very existence of the marks is likely to cause the purchaser of the product to believe that he or she is buying an "authorized" Yamaha product. Thus, they conclude, at the very least, there is a genuine issue of fact as to consumer confusion.

Yamaha–America is mistaken as to each contention. There is no triable issue of fact as to either the genuineness of the goods sold by ABC or the possibility of customer confusion. First, Yamaha alleged in its complaint that ABC was selling goods *made by Yamaha–Japan.* (Paragraph 13—Yamaha–Japan is then referred to as Nippon–Gakki.) This constitutes a judicial admission by Yamaha–America that the products sold by ABC are genuine Yamahas. Thus, Yamaha–America may not now claim that the issue of the genuineness of the products sold by ABC is disputed. "Statements made in pleadings may be admitted against the pleader as

evidence in the form of judicial admissions ..." *Janich Bros Inc. v. The American Distilling Co.* 570 F.2d 848 (9th Cir.1977) (citations omitted). Plaintiffs' may not now controvert these previously admitted facts. *Jurado v. Eleven–Fifty Corp,* 813 F.2d 1406, 1410 (9th Cir.1987), *Foster v. Arcata Associates,* 772 F.2d 1453, 1462 (9th Cir.1985), *cert. denied,* 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986). Thus, the Court can accept as uncontroverted ABC's claim that the products they import are genuine.[4]

Second, Yamaha has not met its burden of establishing that a genuine issue of fact exists as to the consumer confusion as to source or sponsorship. ABC has submitted to the Court evidence that it disclaims any connection to Yamaha–Japan other than purveyor of its products. ABC does not state that it is officially sponsored or approved by Yamaha–Japan or Yamaha–America or that it can supply the purchaser with a Yamaha warranty or authorized service or training. More importantly, Yamaha–America has submitted no evidence that the sales of Yamaha products by ABC creates confusion in the minds of consumers as to the source or sponsorship of the products sold by ABC. Not a single declaration has been submitted by either an ABC customer or a general consumer of electronic musical equipment which states or even suggests that those who purchase products from ABC believe that they are receiving an authorized product. Yamaha has simply not met its burden under *Celotex* of documenting a genuine issue of fact concerning customer confusion.

COUNT IV–ALLEGING REPUTATION INJURY AND DILUTION OF THE DISTINCTIVENESS OF THE YAMAHA TRADEMARK IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 14330

■ California Business and Professions Code § 14330 provides a remedy for injury to business reputation or for dilution of the distinctive quality of a registered trademark. Yamaha–America claims that the sale by ABC of goods bearing the Yamaha trademark causes injury to Yamaha's business reputation and dilutes the effectiveness of the Yamaha trademark. Specifically, Yamaha–America notes that the extensive warranty and consumer education programs sponsored by Yamaha–America add to the attractiveness of Yamaha products and that the sale by ABC of Yamaha products without those peripherals causes injury to Yamaha–America's reputation and dilutes the Yamaha trademark. ABC responds that it cannot possibly have tarnished, degraded, or diluted either the reputation of Yamaha–America or the Yamaha trademarks because it sells only genuine Yamaha products. They note that injury to reputation and dilution of the trademark could well follow the unauthorized sale of cheaper equipment but that no legally recognizable harm can possibly come to Yamaha–America if ABC limits its activities to the sale of genuine Yamaha products.

ABC is correct. From the exhibits submitted by Yamaha–America it is clear that the Yamaha–America warranty provides extensive protection for consumers and that Yamaha–America makes efforts to educate the consumer of Yamaha products. However, it cannot be said that there is a genuine issue of fact as to whether ABC's failure to provide services identical to those provided by Yamaha–America dilutes the value of the Yamaha mark. First, as discussed above, those who purchase Yamaha products from ABC are presented with an ABC warranty and a statement that the goods have been imported by ABC rather than Yamaha. Thus, a claim that the Yamaha mark is tarnished by the sales made by ABC is not plausible. While the goods are made by Yamaha–Japan, the services provided with those goods are ABC's and thus any fallout from the lack of quality of those services reflects poorly upon ABC and not Yamaha.

---

**4.** Additionally, despite the fact that the case was filed over two years ago, Yamaha–America has not provided the Court with any evidence that the "Yamaha" products sold by ABC are made by any entity other than Yamaha–Japan. Thus, even if no judicial admission had been made, Yamaha–America has failed to provide any evidence which indicates that a genuine issue of fact exists as to the authenticity of the products sold by ABC.

Second, Yamaha has presented no evidence that the value of the Yamaha trademark has been diminished by the sale of Yamaha products by ABC. Not a single declaration has been provided to the Court which indicates that consumers who have purchased genuine Yamaha products from ABC were later disappointed to learn that the product was not backed by a Yamaha warranty or authorized Yamaha sales or service personnel. Nor, have any declarations been provided which suggest that consumers value the Yamaha marks because the mark represents certain warranty or consumer education programs. Thus, this Court can only assume that the individual who purchases at ABC receives exactly what he or she wants: A genuine product without the Yamaha warranty and other peripheral services that come with a purchase of a Yamaha product through an authorized Yamaha representative. To argue that this dilutes the Yamaha trademark is much like saying the sale of a broken down Chevrolet dilutes the value of the Chevrolet trademark.

## COUNT V–THE TARIFF ACT VIOLATIONS

Section 526 of the Tariff Act of 1930, 19 U.S.C. § 1526 prohibits the unauthorized importation of or dealing in foreign-made merchandise bearing a registered trademark owned by a United States corporation. Yamaha–America claims defendants have imported goods bearing the Yamaha trademark in violation of these provisions. ABC maintains that the protection of U.S. companies provided by 19 U.S.C. § 1526 does not apply to American subsidiaries of foreign manufacturers and, as a result, Yamaha, as a wholly owned subsidiary of Yamaha–Japan, is not entitled to claim the protection of that statute. ABC is correct.

The protection provided to American trademark holders by the Tariff Act has been consistently interpreted by U.S. Customs for more than fifty years not to be available to American subsidiaries of foreign corporations. U.S. Customs regulations interpreting the Tariff Act, 19 C.F.R. § 133.21(c)(2), state that:

"(c) The restriction set forth in paragraphs (a) and (b) do not apply to imported articles when: the foreign and domestic trademark or trade name owners are parent and subsidiary companies or are otherwise subject to common ownership or control ..."

This regulation was recently upheld by the Supreme Court in *K–Mart Corp. v. Cartier, Inc.*, — U.S. —, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988). In that case, the Court, faced with a direct challenge to the customs regulation determined that the regulation incorporates a permissible interpretation of otherwise ambiguous provisions of the Tariff Act.[5] Yamaha–America's attempt to characterize the *K–Mart* decision as inapplicable to the facts of this case is unconvincing. Yamaha argues that the regulations validated in *K–Mart* simply state Customs Service policy in enforcing § 526 and that the regulations are not binding on this Court. Yamaha is correct that the regulations do not define the full scope of the protections offered by § 526. *Vivitar v. United States*, 761 F.2d 1552 (2nd Cir.1985). However, this Court declines to interpret § 526 any differently than does the Customs Service. First, the regulations represent a reasoned and reasonable interpretation of the Act. *K–Mart v. Cartier*, — U.S. —, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988). Second, even if this Court were to review the statute *de novo*, it would conclude that Yamaha is not entitled to relief under § 526. To allow Yamaha–America and firms like it such protection would allow any foreign manufacturer to use a wholly owned American subsidiary as a means to secure the help of American tariff law in enforcing worldwide price discrimination. This can not be seen to have been the intent of Congress in passing § 526.[6] *See NEC Electronics v. CAL Cir-*

---

**5.** U.S. Customs, applying the regulation, has excepted from its exclusion orders for Yamaha brand goods, those made by Yamaha–Japan.

**6.** Yamaha also argues that it ought to be excepted from the customs regulations because it has developed a large degree of "goodwill" among American customers that is wholly independent

**1404**

*cuit Abco,* 810 F.2d 1506 (9th Cir.1987). Therefore, summary judgment is appropriate as to Yamaha-America's Tariff Act claims.

## THE LANHAM ACT VIOLATIONS

■ The Lanham Act, 15 U.S.C. § 1124, prohibits, *inter alia,* the importation of goods to which any false designation of origin has been applied. Yamaha-America claims that ABC's importation of goods to which the Yamaha trademarks have been affixed without the permission of Yamaha-America, the trademark holder, is a violation of the Lanham Act. Yamaha-America is mistaken. As discussed above, Yamaha-America has already made a judicial admission that the goods imported by ABC are genuine Yamaha items. Under current Ninth Circuit law, the importation of genuine goods is not actionable under the Lanham Act. *NEC Electronics v. Cal Circuit Abco,* 810 F.2d 1506 (9th Cir.1987); *See Also Olympus Corporation v. United States,* 792 F.2d 315 (2nd Cir.1986). In *NEC,* the Court held no cause of action arose under the Lanham Act when an American importer imported *genuine* trademarked items that had been sold overseas by the parent of the American trademark holder. The Court stated that even though the American subsidiary held a valid trademark, it was the decision of the parent company to sell in foreign markets for a price lower than the price charged by its American subsidiary. Thus, the importation complained of was the direct result of a decision made by those who control the American subsidiary. The Court reasoned that to allow the subsidiary to then claim a trademark violation would have the effect of allowing the foreign company to use American trademark laws to "insulate the American economy and vitiate the effects of International trade." and "establish a worldwide discriminatory pricing scheme simply through the expedient of setting up an American company with nominal title to

of its relationship with Yamaha-Japan. They argue that this independent American identity ought to place it under the protection of laws that seek to protect American companies from infringing foreign-made products. Yamaha is

its mark." 810 F.2d at 1511. The facts of *NEC* are indistinguishable from this case.

For the foregoing reasons, the Court granted defendant ABC's motion for summary judgment as to Counts III, IV, and V of the First Amended Complaint.

mistaken. Yamaha is wholly owned subsidiary of Yamaha-Japan. Thus it is not only clearly falls under the "common control" provision of 19 C.F.R. § 133.21 but is incapable of being meaningfully independent of Yamaha-Japan.