**YAMAHA CORPORATION OF AMERICA, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**Civ. A. No. 89–1431 (HHG).**

United States District Court,
D. Columbia.

Jan. 11, 1990.

Robert E. Wagner, Linda A. Kuczma, James J. Jagoda, Wallenstein, Wagner & Hattis, Ltd., Chicago, Ill., William T. Bullinger, Sheldon H. Klein, Cushman, Darby & Cushman, Washington, D.C. (David Lu, Corporate Legal Counsel, Yamaha Corp. of America, Buena Park, Cal., of counsel), for plaintiff.

Jay B. Stephens, U.S. Atty., John D. Bates and Daniel J. Standish, Asst. U.S. Attys., Washington, D.C. (Alfonso Robles, U.S. Customs Service, U.S. Dept. of Treasury, of counsel), for defendants.

## MEMORANDUM AND ORDER

HAROLD H. GREENE, District Judge.

Before the Court is defendant's motion to dismiss this gray market goods case. The action seeks a declaratory judgment that Customs Regulation 133.21(c)(2) is invalid and that plaintiff is entitled to a genuine goods exclusion order from the Customs Service. For the reasons stated below, the Court grants the motion in part and denies it in part.

### Background

Yamaha Corporation of America ("Yamaha America") is a wholly owned subsidiary of Yamaha Corporation, a Japanese company ("Yamaha Japan). Yamaha America is the exclusive authorized U.S. distributor of "Yamaha" brand music and sound equipment manufactured by Yamaha Japan. Yamaha America owns, by assignment, the U.S. trademark registration to various products, and these registrations have been recorded with U.S. Customs.

Gray marketeers buy certain products manufactured by Yamaha Japan and import and sell these products in the United States without consent from Yamaha America. Yamaha America asserts that these products were intended for sale overseas and differ in the following respects from virtually identical products sold under the same trademark in the United States: (1) the overseas products operate on different voltages than those intended for sale in

this country and have multivoltage switches; (2) the overseas products are not approved by the Underwriters Laboratories; (3) the overseas products do not have certain electromagnetic shields required by the Federal Communications Commission; and (4) the overseas products are not covered by the warranties issued by Yamaha America for authorized "Yamaha" products sold in the United States.

Yamaha America maintains that buyers of the gray market goods are deceived into believing that Yamaha America stands behind, warrants or guarantees these goods. It also claims that consumers may incorrectly conclude that the gray marketeers are authorized Yamaha America dealers, injuring the latter's goodwill and business reputation.

In January 1989, Customs informed Yamaha America that it was not entitled to have genuine trademarked products excluded from importation into this country inasmuch as to do so would be contrary to 19 C.F.R. § 133.21(c)(2).[1]

Yamaha America then initiated the instant action. In Count I, it seeks a declaratory judgment that it is entitled under the Lanham Act, 15 U.S.C. § 1124, and the Tariff Act, 19 U.S.C. § 1526, to a genuine goods exclusion order from Customs. Count II argues that 19 C.F.R. § 133.21(c)(2), the provision pursuant to which Customs denied the order, is invalid.

### Discussion

■ Defendant asserts that Yamaha America is estopped from claiming protection under the Lanham and Tariff Acts from importation by third parties of genuine Yamaha goods because it previously raised and lost this issue in *Yamaha Corp. of America v. ABC Int'l Traders, Inc.*, 703 F.Supp. 1398 (C.D. Cal.1988).

In *ABC*, Yamaha sought to stop the importation of genuine Yamaha goods by gray marketers. It argued, among other things, that importation violated the Lanham and Tariff Acts. After a detailed and thorough discussion of the issues, the court granted summary judgment against Yamaha America on both claims, and it denied Yamaha's request for certification for interlocutory appeal.[2]

Collateral estoppel, or issue preclusion, is based on the principle that once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *McLaughlin v. Bradlee*, 803 F.2d 1197, 1201 (D.C.Cir.1986) (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980). In other words, collateral estoppel requires that (1) the same issue was litigated, that is, contested by the parties and submitted for determination by the court, and (2) the issue must have been actually and necessarily determined by a court of competent jurisdiction.[3] *McLaughlin*, 803 F.2d at 1201.

The issues regarding the Lanham and Tariff Acts in the instant case are identical to those actually litigated and necessarily decided in *ABC International Traders*. Moreover, the issues here—whether the Lanham and Tariff Acts provide plaintiff a basis to block the goods manufactured by

---

1. Regulation § 133.21(c)(2) carves an exception to § 133.21(b) (1988), which provides for of foreign-made articles bearing a trademark identical with one owned and recorded by a U.S. corporation. Section 133.21(c)(2) states that § 133.21(b) does not apply where "[t]he foreign and domestic trademark or trade name owners are parent and subsidiary companies. . . ." The exception is based on the belief that goods are genuine when they bear trademarks valid in their country of origin and when the foreign manufacturer is an affiliate. *Lever Bros. Co. v. U.S.*, 877 F.2d 101, 104 (D.C.Cir.1989).

2. ABC International Trader's counterclaims are still pending.

3. Plaintiff cites *Texas Oil & Gas Corp. v. Hodel*, 654 F.Supp. 319, 325 (D.D.C.1987) for a more restrictive test of whether collateral estoppel is appropriate. To the extent that plaintiff appears to suggest this is the test employed in this Circuit, the citation is misleading. The test cited by plaintiff is, in fact, taken from a decision by the Court of Appeals for the Eighth Circuit. The Court in *Texas Oil* made it clear that it was merely quoting from the Eighth Circuit decision and not adopting it. *Id.* at 325.

Yamaha Japan—were actually and necessary determined in *ABC*.

Plaintiff's arguments to the contrary are meritless. Plaintiff asserts that *ABC* involved one of many importers of Yamaha products, while the instant action is against the Customs Service. Although the identity of the defendant may be significant in a res judicata context, it is not here. Plaintiff also argues that the instant action does not raise trademark infringement claims, while *ABC* did. However, it is of no consequence that plaintiff may have raised issues in *ABC* that it does not raise here.[4]

Plaintiff also argues that *ABC* cannot have collateral estoppel effect because it was interlocutory and, therefore, unappealable.[5] On the contrary, summary judgment is a final judgment for purposes of collateral estoppel. *Jackson v. Hayakawa*, 605 F.2d 1121, 1125 n. 3 (9th Cir.1979). Even if plaintiff were to appeal the *ABC* decision, it nevertheless would have collateral estoppel effect during the pendency of the appeal. *Southern Pacific Communications Co. v. American Telephone & Telegraph Co.*, 740 F.2d 1011, 1018 (D.C. Cir.1984); *Hunt v. Liberty Lobby, Inc.*, 707 F.2d 1493, 1497 (D.C.Cir.1983).

Plaintiff's final argument that this action raises some issues not decided in *ABC*, has more merit. *ABC*, for example, did not address plaintiff's argument here that Customs' regulation on genuine goods exclusion orders conflict with the Paris and Friendship treaties. Accordingly, collateral estoppel bars only the relitigation of plaintiff's argument based on the Tariff and Lanham Acts.

Count II of the complaint seeks a declaratory judgment that Customs Regulation § 133.21(c) is invalid because:

(1) it exceeds the authority of the Secretary of Treasury to promulgage regulations consistent with the laws;

(2) it discriminates against Yamaha America by denying it the rights under Tariff and Lanham Acts;

(3) it violates due process and equal protection by denying it protection of the Tariff and Lanham Acts;

(4) violates the Paris Convention for the Protection of Industrial Property, 2 U.S.T. 2140, T.I.A.S. 7727 (1973); and

(5) violates the Treaty of Friendship, Commerce and Navigation, 4 U.S.T. 2063, T.U.A.S. 2863 (1953).

Arguments one, two and three amount to no more than an effort by plaintiff to recast and resurrect its argument in *ABC*.[6] The effort is meritless, particularly in light of *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988), which held that Customs Regulation § 133.21(c) was a reasonable interpretation of § 526 of the Tariff Act, and *Lever Bros. Co. v. United States of America*, 877 F.2d 101 (D.C.Cir.1989),[7] which implicitly concluded that the regulation was a reasonable interpretation of the Lanham Act except where the products at issue were materially different. *See also Weil Ceramics and Glass, Inc. v. Dash*, 878 F.2d 659, 671 (3d Cir.1989) (Lanham Act does not apply to goods that do not copy or simulate genuine article); *Olympus Corp. v. United States*, 792 F.2d 315, 321 (2d Cir.1986) (same).

Accordingly, plaintiff's arguments as to the validity of regulation 133.21(c) under the Lanham and Tariff Acts must be dismissed, except on the issue of whether products in the instant case fall within the "materially different" exception of *Lever Bros.*, and, if so, whether the plaintiff is

---

**4.** Plaintiff describes defendant's argument on this subject as "frivolous" and "meritless". Elsewhere, plaintiff expresses "amaze[ment]" at what it characterizes as "patently ridiculous" arguments put forth by defendant. Such hyperbole is unwarranted and unhelpful.

**5.** Plaintiff cites no legal support or authority for this position.

**6.** If plaintiff has no rights under the Lanham and Tariff Acts, as *ABC* expressly held, there can

be no discrimination and no violation of equal protection or due process.

**7.** Plaintiff asserts that *Lever Bros.* "explicitly held" that § 133.21(c)(2) was inconsistent with § 42 of the Lanham Act. This misrepresents that decision. *Lever Bros.* indicated no more than that § 133.21(c)(2) may be inconsistent with the Act when applied to materially different products.

estopped from raising that issue by the decision in *ABC*. Neither party has sufficiently briefed these issues for the Court to render judgment.

■ The complaint next asserts that the regulation violate the Article X of the Treaty of Friendship, Commerce and Novigation, (the FCN Treaty). This argument is equally without merit. Article X of this Treaty between the United States and Japan provides:

> National and companies of either Party shall be accorded, within the territories of the other Party, national treatment and most-favored-nation treatment with respect to obtaining and maintaining patents of invention and with respect to rights in trade arms, trade names, trade labels and industrial property of every kind.

Plaintiff is not covered by this provision, which expressly applies to "national and companies of either party ... within the territories of the other Party...." Since plaintiff is a company organized within the United States, it is not a "national or company of" Japan and is not covered by the treaty. *See Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176, 102 S.Ct. 2374, 72 L.Ed.2d 765 (1982); *see also* Plaintiff's Mem. at 15 (asserting that plaintiff is a domestic company). Plaintiff, therefore, lacks standing to invoke its terms of the treaty because, by its language, the treaty does not protect American companies in the United States.[8]

■ The complaint's final claim is based on the Paris Convention for the Protection of Industrial Property (the Paris Treaty).[9] Defendants assert—and plaintiff does not challenge—that plaintiff's claim arises under Article 2, clause 1 of the Treaty, which provides, in part:

> Nationals of any country of the Union shall, as regards the protection of indus-

trial property, enjoy in all the countries of the Union the advantages that their respective laws now grant, or may hereafter grant to nationals; all without prejudice to the rights specifically provided for by this Convention. Consequently, they shall have the same protection as the latter, and the same legal remedy agains any infringement of their rights, provided the conditions and formalities imposed upon nationals are complied with.

Plaintiff, as discussed above, is a domestic company and, therefore, is not a "national" of "other countries in the Union". It, therefore, does not have a cause of action under the treaty. Plaintiff's argues that "it makes little sense to allow Yamaha Japan to avail itself of the trademark laws and yet deny such protection to Yamaha America, its wholly-owned domestic subsidiary...." The argument is meritless.

### Conclusion

Because plaintiff has failed to demonstrate that in most respects it has colorable claims, the motion dismiss must be granted, except on the issue of whether the products in the instant case fall within the "materially different" exception of *Lever Bros.*, and, if so, whether the plaintiff is estopped from raising that issue by the decision in *ABC*.

ORDERED that defendant's motion to dismiss be and it is hereby granted except with respect to the issue of whether the products in the instant case fall within the exception discusse in *Lever Bros.*, and, if so, whether plaintiff is estopped from raising that issue here by virtue of *ABC*.

---

**8.** Plaintiff's argument to the contrary is grounded on the notion that it has rights under the Lanham and Tariff Acts. That issue has already been disposed of, and the Court will not revisit it again.

**9.** It must be noted that the plaintiff's opposition to the motion to dismiss does not directly address defendant's basic argument that the treaty

does not protect American companies in the United States; rather, plaintiff directs the Court to read its summary judgment brief "for a more detailed discussion" for the issues. This is unhelpful, particularly since the summary judgment brief also does not appear to address the issue raised by defendant.